## DITTMAN v. BAILEY.
### No. 1974.

Court of Civil Appeals of Texas. Beaumont.
Sept. 19, 1930.

W. Owen Dailey, of Houston, for appellant.

Mark M. Carter, of Goose Creek, for appellee.

O'QUINN, J.

Appellant brought this suit March 26, 1927, in the district court of Harris county, against appellee for the possession of certain premises and certain personal property located thereon, alleging that he was the owner of the property mentioned, real and personal, and entitled to the possession thereof; that on December 20, 1926, he delivered into the possession of appellee said property (a house and certain personal property constituting a restaurant outfit) to be used by appellee in the operation of a café or restaurant at Goose Creek in Harris county, and which said property was to be surrendered and returned to appellant on his demand; that appellee promised and agreed to pay appellant the sum of $5 per day, payable daily, for the use of said property; that about March 24, 1927, he demanded the return to him by appellee of said property, but that appellee refused to surrender or return the same, and had wrongfully and unlawfully converted same to his own use and benefit, to appellant's damage in the sum of $1,035; and prayed that he have judgment for the return of said property and for his damages and costs of suit. Appellant caused a writ of sequestration to issue, and April 22, 1927, took possession of the property in question. April 30, 1927, on motion of appellee, the writ of sequestration was quashed, but the property was not restored to the possession of appellee, for the reason the officer could not get in touch with appellee, and appellee's attorney refused to receive same.

Appellee, defendant, answered claiming the personal property sequestered, and denying that appellant owned same, and by cross-action over against appellant alleged that appellant had converted said property, and sued for damages in the value of same, and for loss of profits he would have made in the operation of his café business for the remainder of his rental term, and for exemplary damages, alleging that appellant acted with malice, with intent to injure, and without probable cause in suing out the writ of sequestration and sequestrating the property in question.

The case was tried to a jury upon the following special issues, the answers to which are indicated:

Special Issue No 1: "At the time of the levy of the writ of sequestration by the sheriff, did the defendant Bailey own any of the property located in the café in question?"

Answer: "Yes."

Special Issue No. 2: "If you have answered the preceding issue 'yes' and only in that event, then answer the following issue: What was the market value in Goose Creek, Texas, on April 22, 1927, of the property in said café owned by the defendant Bailey?"

Answer: $800.00 (Eight Hundred Dollars)."

Special Issue No. 3: "Did the plaintiff Carl Dittman have reasonable cause to fear that the defendant Bailey would injure the property located in the Bailey Café during the pendency of this suit?"

Answer: "No."

Special Issue No. 4: "At the time, or just prior to the levying of the writ of sequestration, was the defendant Bailey wasting, injur-

ing or destroying the property in the café belonging to Dittman?"

Answer: "No."

"The court instructs you that you may in this case assess exemplary or punitive damages against the plaintiff Carl Dittman. Exemplary or punitive damages are awarded in the nature of a punishment, not to enrich the injured party, but for public good, and in this case you are instructed that if you believe, from the evidence, that the actions of Carl Dittman in taking possession of the property involved in this suit under the writ of sequestration was willful and wanton, or if said Carl Dittman has acted oppressively, or in a harsh or oppressive manner, with intent to injure the defendant Bailey in connection therewith, you may assess such amount as exemplary damages as you may deem proper under all the circumstances in this case."

"In this connection you are instructed that an act is malicious, within the meaning of the law, when the doing of such act manifests a wanton and reckless disregard of the rights of others, with intent to injure said person."

Special Issue No. 4-A: "Bearing in mind the foregoing instructions you will answer the following issue: Was the act of Carl Dittman in securing the property and premises in question in the manner shown by the evidence malicious, as the term malicious is hereinabove defined?"

Answer: "Yes."

Special Issue No. 5: "If you have answered the above issue 'yes', and only in that event, then answer this issue: What amount of exemplary damages, if any, do you find the defendant, H. M. Bailey, is entitled to recover from the plaintiff?"

Answer: "$5000.00 (Five Thousand Dollars)."

Special Issue No. 6: "Was the lease of said property from Dittman by the defendant Bailey by the day, by the month, or was it for a period of more than one year? Answer as you find the facts to be 'by the day, by the month, or for a period of more than one year' and let your answer state for how many days, months, or if for a period of more than one year, how much more than one year."

Answer: "One year."

Special Issue No. 7: "When did the defendant Bailey take charge of said building under his lease with Dittman, if any?"

Answer: "January 22nd, 1927."

Special Issue No. 8: "Did, or did not, the defendant H. M. Bailey voluntarily turn over the place of business to the sheriff when the writ of sequestration was presented to him?"

Answer: "He did not."

Special Issue No. 9: "Was A. T. Hamilton, deputy sheriff, acting under the writ of sequestration alone, or was he acting under the direction of Carl Dittman and the writ, in taking the property?"

Answer: "He was acting under the direction of Carl Dittman and the writ."

Special Issue No. 10: "What amount of rent is due the plaintiff from the defendant for the building occupied by him?"

Answer: "None."

On the answers of the jury to the special issues judgment was rendered that appellant take nothing by his suit against appellee; that appellee recover the sum of $800 against appellant and his surety on his sequestration bond, and that appellee recover from appellant the sum of $5,000 as exemplary damages, and all costs of suit. Motion for a new trial was overruled, and the case is before us on appeal.

Appellant presents forty-nine assignments of error, but we shall discuss only the questions necessary to a disposition of the appeal.

Special Issue No. 1 inquired whether appellee, Bailey, owned any of the property located in the café. This question applied, of course, to ownership at the time appellant sequestrated and took charge of the café. Both appellant, Dittman, and appellee, Bailey, claimed to own the personal property constituting the café furniture and fixtures. It was insisted by appellant that he bought and paid for the restaurant outfit, and rented them to appellee at a rate of $5 per day, same to be paid daily. He so testified. It was contended by appellee that he bought the outfit from appellant, and was renting the building from appellant at $2.50 per day and was paying for the personal property—furniture and fixtures—at the rate of $5 per day. He so testified. The question of whether appellant sold the property to appellee was not submitted to the jury, the court holding, in refusing special issues requested submitting said question to the jury, that there was no evidence of a sale, and that the issue was not in the case. The question of whether the $5 a day payments were for the rent of the outfit, or were in payment for same, was requested in the form of a special issue to be submitted to the jury and was refused by the court. Notwithstanding this, the court submits special issue No. 1 as to whether appellee owned any of the property located in the café. The issue did not inquire whether appellee had any of his private property in the café, other than, aside from, and different from any of the café furniture and fixtures involved in the suit, but left the matter for the jury to answer generally. This was error. The jury answered that appellee owned property in the café in the sum of $800, and the evidence shows that this was their estimate of the value of the furni-

ture and fixtures constituting the café outfit. So we have the court refusing a special issue as to whether the property was rented by appellant to appellee, or was appellee paying for the property in payments of $5 per day, in pursuance of his holding that no sale of the property by appellant to appellee was shown, and then submitting special issue No. 1, to which the jury answered that appellee owned the property and that it was worth $800. This was error necessitating a reversal of the case.

The above holding is further supported by the fact that the court submitted special issue No. 3, inquiring whether appellant, Dittman, had reasonable grounds to fear that appellee, Bailey, would injure the property located in the café pending the suit. This question must have been based upon the court's idea that Dittman owned the property, and yet, as before shown, in answer to a special issue, the jury were permitted to find that Bailey owned the property. If Bailey owned the property, then there would, under the facts in evidence, have been no basis for special issue No. 3. This idea of the court that no issue as to a sale of the property to appellee was raised is further shown by special issue No. 4, which inquired whether, at the time of levying the writ of sequestration, Bailey was injuring, wasting or destroying the property in the café "belonging to Dittman." If the property belonged to Dittman, as the court there said it did, why should Bailey have a finding by the jury that it was his and get an $800 judgment against Dittman for its value? The ownership of the property was the heart of the case. Both parties strongly contended they owned it. This question should have been submitted to the jury so as to allow a finding on each of the contentions. The court held that no sale of the property by Dittman to Bailey was evidenced, but the jury said otherwise, and the court granted judgment against Dittman on their finding.

The finding by the jury that appellee owed appellant nothing for rent of the building is not supported by the evidence, but is directly against the undisputed evidence. It was undisputed that Bailey occupied the place from January 22, 1927, until he was closed up on the night of April 21, 1927. It was also without dispute that he had not paid Dittman anything for rent after March 26, 1927. He admitted that he was to pay $2.50 per day rent on the building. He had not paid rent for the last twenty-six days, and hence owed Dittman rent for that time.

Appellant's contention that he was entitled to a foreclosure of his landlord's lien on the personal property in question could be correct only in the event it was established that Bailey owned the property, for, if appellant owned same and it was rented to appellee then appellee had no interest in the property upon which a foreclosure could be had. Further, if Bailey owned the property, Dittman could only foreclose his landlord's lien on same to the extent of the rents due, as article 5238, R. S. 1925, gives a landlord a lien for the rents, and not for advances made to the tenant. Article 5222, R. S., has no application to landlords renting or leasing buildings.

Other questions are presented, but, as they may not arise upon another trial, it is not necessary to discuss them. For the reasons above indicated, the judgment is reversed, and the cause remanded for another trial.